Present:  All the Justices

FORD MOTOR COMPANY

v.  Record No. 062620  OPINION BY JUSTICE CYNTHIA D. KINSER
                                    January 11, 2008
WILLIAM K. FAVINGER

                FROM THE COURT OF APPEALS OF VIRGINIA


     In this workers' compensation claim for temporary

partial disability benefits, the dispositive issue is

whether an employee made a reasonable effort to market his

residual work capacity.  Because the record contains no

evidence that the employee did so, we will reverse the

judgment of the Court of Appeals of Virginia that affirmed

an award of benefits.

     On September 11, 2002, while working for Ford Motor

Company, William K. Favinger suffered an injury compensable

under the Virginia Workers' Compensation Act (the Act),

Code §§ 65.2-100 through 65.2-1310.  Favinger received

compensation benefits for various periods and was

eventually released to return to light duty work on May 12,

2003.  Prior to his injury, Favinger performed work in a

body shop that required lifting up to 25 pounds, but the

light duty work involved less physical exertion and

consisted of work in an office setting and some

"containment work" in the body shop.  Since his return to

light duty work, Favinger has received his pre-injury hourly wage.

On July 31, 2003, Favinger filed a change of condition application alleging entitlement to temporary partial disability benefits for the periods of May 12, 2003 through June 1, 2003 and June 10, 2003 through September 21, 2003.[1] Favinger claimed that he earned less performing light duty work than he had earned in his pre-injury job because of the loss of overtime work offered by Ford.

A deputy commissioner denied Favinger's claim for temporary partial disability benefits.  With respect to the issues before us, the deputy commissioner concluded Favinger did not show "that comparable workers in the body shop earned more overtime after May 12, 2003, than he was able to earn."  The deputy commissioner also found that Favinger failed to carry his burden to "prove that he marketed his residual capacity and was unable, despite those efforts, to eliminate or mitigate his wage loss."

---

[1] Favinger included in his claim the period from May 16, 2003 through May 25, 2003 when Ford experienced a temporary shut down and the period from June 30, 2003 to July 14, 2003 when Ford had its annual shut down.
Favinger also sought temporary total disability benefits from June 2 through June 9, 2003.  Ford agreed that Favinger was entitled to the claimed compensation for that one time period.

Favinger sought review of the deputy commissioner's decision by the Workers' Compensation Commission (Commission).  The Commission awarded Favinger temporary partial disability benefits for various post-injury weeks in which his weekly wages were less than his pre-injury average weekly wages.  The Commission concluded that Favinger did not have "to prove that comparable employees continued to receive overtime opportunities . . . [because] they were free to pursue other employment opportunities if they became dissatisfied with less frequent overtime[; whereas, Favinger] was partially disabled as a result of a compensable work injury, and thus precluded from seeking employment comparable to his pre-injury position with other employers."

Ford appealed the Commission's decision to the Court of Appeals of Virginia.  In an unpublished opinion, the Court of Appeals held that the Commission erred by failing to address whether Favinger had "adequately marketed his residual work capacity in order to recoup his lost overtime."  Ford Motor Co. v. Favinger, Record No. 0112-05-1, slip op. at 2 (October 11, 2005).  The Court of Appeals thus reversed the award of benefits and remanded the case to the Commission for determination of that question.  Id.

3

On remand, the Commission noted that Favinger testified during the hearing before the deputy commissioner that he did not seek other employment during the periods when Ford did not offer him overtime.  The Commission, however, found that it was "unreasonable to expect [Favinger] to try to find additional employment over and above the [40] hours he was already working for the employer.  Such work would likely interfere with any overtime which might become available."  Thus, the Commission concluded "that under the circumstances of this case, [Favinger] did not have a duty to market his residual capacity during times when the employer did not offer overtime to any of its employees."  The Court of Appeals subsequently held that Ford's appeal of the Commission's decision was without merit.  Ford Motor Co. v. Favinger, Record No. 1254-06-1 (September 19, 2006).

On appeal to this Court, Ford presents three assignments of error:  (1) the Court of Appeals erred by sustaining the Commission's finding that Favinger established a causal link between his alleged wage loss and his work-related injury; (2) the Court of Appeals erred in upholding the Commission's award of benefits because Favinger failed to market his residual work capacity; and (3) the Court of Appeals erred by affirming the

4

Commission's award of benefits that was based on Favinger's post-injury actual weekly wages instead of his post-injury average weekly wages. The second issue is dispositive of this appeal.

With regard to Favinger's marketing of his residual work capacity, Ford argues that, since Favinger's wage loss claim is based on the reduced amount of overtime that he worked after his injury, he must show that he sought work in addition to his normal 40-hour work week and could not find such employment because of his work-related injury. Ford challenges the Commission's conclusion that it was unreasonable to require Favinger to find work in excess of 40 hours and contends that there is no evidence to support the Commission's finding that part-time work might conflict with Favinger's duties at Ford. Ford acknowledges that, if Favinger had demonstrated that he tried to find additional work and that such work conflicted with his job at Ford, he would have satisfied his burden to market his residual work capacity.

In response, Favinger argues that his acceptance of a light duty job procured by Ford and his willingness to work overtime when offered by Ford demonstrates that he marketed his residual capacity to work more than 40 hours per week. He also contends that it would be unreasonable to expect

him to work part-time for another employer because the hourly rate of pay would be significantly lower than the rate he earned working overtime at Ford. And, if he accepted such a position, he would not be available to work overtime when Ford offered it to him. In short, Favinger contends that he "marketed himself by simply being available, upon a moment's notice, to work overtime" at Ford.

An award by the Commission is conclusive and binding as to all questions of fact. Code § 65.2-706(A); Bass v. City of Richmond Police Dep't, 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999); Stenrich Group v. Jemmott, 251 Va. 186, 192, 467 S.E.2d 795, 798 (1996). The determination as to whether an employee seeking temporary partial disability benefits has made a reasonable effort to market his residual work capacity falls within the Commission's fact-finding, and if the Commission's factual conclusion on that question is supported by credible evidence, it will not be disturbed on appeal. Wall Street Deli, Inc. v. O'Brien, 32 Va. App. 217, 220-21, 527 S.E.2d 451, 453 (2000). The Commission's factual findings, however, are "'conclusive and binding' only to the extent that they are 'predicated upon evidence introduced or appearing in the proceedings.'" Uninsured Employer's Fund v. Gabriel, 272 Va. 659, 664, 636

S.E.2d 408, 411 (2006) (quoting Vanzant v. Southern Bending Co., 143 Va. 244, 246, 129 S.E. 268, 268 (1925)).  If the Commission's findings of fact are not based on credible evidence, "its findings are not binding and the question presented becomes one of law."  Great Atlantic & Pacific Tea Co. v. Robertson, 218 Va. 1051, 1053, 243 S.E.2d 234, 235 (1978) (citing Conner v. Bragg, 203 Va. 204, 207, 123 S.E.2d 393, 395 (1962)); accord Gabriel, 272 Va. at 664, 636 S.E.2d at 411; American Motorists Ins. Co. v. Summers, 183 Va. 428, 431, 32 S.E.2d 673, 674 (1945).

Pursuant to Code § 65.2-502(A), an employer is required to pay to an employee with partial incapacity for work resulting from an injury "a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter."  A partially disabled employee who refuses "employment procured for him suitable to his capacity" loses entitlement to certain benefits "during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified."[2]

---

[2] We have stated that the legislative intent behind former Code § 65.1-63 (now Code § 65.2-510) is "to encourage injured employees to seek selective employment rather than to remain unemployed unless the employer finds such employment for them."  Big D Quality Homebuilders v. Hamilton, 228 Va. 378, 382, 322 S.E.2d 839, 841 (1984).

Code § 65.2-510; see Washington Metropolitan Area Transit Authority v. Harrison, 228 Va. 598, 601, 324 S.E.2d 654, 656 (1985).

In a claim for temporary partial disability, the employee "[has] the burden of proving that he [has] made a reasonable effort to procure suitable work but [is] unable to market his remaining work capacity." Harrison, 228 Va. at 601, 324 S.E.2d at 656; see also White v. Redman Corp., 41 Va. App. 287, 292, 584 S.E.2d 462, 464 (2003) ("A partially incapacitated employee . . . is not entitled to temporary total disability benefits unless he has made a reasonable effort to market his remaining capacity for work."); Holly Farms Foods, Inc. v. Carter, 15 Va. App. 29, 42, 422 S.E.2d 165, 171 (1992) ("A claimant still has the burden of proving his entitlement to benefits, and to do that 'he [has] the burden of proving that he [has] made a reasonable effort to procure suitable work but was unable to market his remaining work capacity.' ") (alterations in original) (citation omitted); Manis Constr. Co. v. Arellano, 13 Va. App. 292, 294, 411 S.E.2d 233, 234 (1991) ("As a condition to benefits under the Virginia Workers' Compensation Act . . . , a partially disabled employee must make a reasonable effort to market his remaining work capacity."); National Linen Serv. v. McGuinn, 8 Va. App.

267, 270, 380 S.E.2d 31, 33 (1989) ("[A claimant] who seeks compensation of the wage differential between his new and his old jobs[] has the burden of proving that he has made a reasonable effort to market his full remaining work capacity.").

There are no fixed guidelines for determining what constitutes a "reasonable effort" by an employee to market residual work capacity. Great Atlantic & Pacific Tea Co. v. Bateman, 4 Va. App. 459, 467, 359 S.E.2d 98, 102 (1987). An employee must "exercise reasonable diligence in seeking employment" and the reasonableness of an employee's effort will be determined on a case by case basis, taking into account "all of the facts and surrounding circumstances." Id. Some of the criteria, however, that should be considered include:

> (1) the nature and extent of [the] employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of [the] employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting [the] employee's capacity to find suitable employment.

National Linen Service, 8 Va. App. at 272, 380 S.E.2d at 34 (footnotes omitted); accord Metropolitan Washington Airports Auth. v. Lusby, 41 Va. App. 300, 317, 585 S.E.2d 318, 326 (2003); Wall Street Deli, 32 Va. App. at 220, 527

9

S.E.2d at 453. In sum, an employee "must present 'some evidence that he [has] engaged in a good faith effort to obtain work within the tolerance of his physical condition' and has failed to find a job, either due to his injury or because no such work was available in the community." National Linen Service, 8 Va. App. at 271, 380 S.E.2d at 34 (quoting Dunkin Donuts of America, Inc. v. Watson, 366 A.2d 1121, 1126 (Me. 1976) (emphasis added)).

Favinger, however, did not make a reasonable effort to market his residual work capacity; in fact, he made no effort. When testifying before the deputy commissioner, Favinger was asked: "When you were losing that overtime did you seek any other employment to pick up that overtime?" Favinger responded: "No, sir."

Despite this testimony, the Commission concluded that it was "unreasonable to expect" Favinger to market his residual capacity beyond his 40-hour work week at Ford and that, if he did so, such overtime work "would likely interfere with any overtime which might become available" at Ford.[3] The Commission's conclusion, however, is not

_____

[3] The two cases cited by the Commission to support its conclusion, Carr v. Virginia Electric & Power Co., 25 Va. App. 306, 487 S.E.2d 878 (1997), and Consolidated Stores Corp. v. Graham, 25 Va. App. 133, 486 S.E.2d 576 (1997), did not address the issue of an employee's responsibility

10

supported by any evidence that Favinger actually attempted to market his residual work capacity and that available jobs within his capacity would have interfered with his duties at Ford, including his ability to accept overtime work when offered by Ford.

Before his injury, Favinger routinely worked 50-hour weeks at Ford, and he now claims a wage loss for the overtime that he did not receive during certain weeks while performing his light duty job. The fact that he accepted the light duty job and was willing to work overtime when Ford offered it did not negate the requirement that he make a reasonable effort to market his residual work capacity, i.e., the additional 10 hours of overtime.[4] In the absence of a reasonable effort to market his residual work capacity, Favinger is not entitled to temporary partial disability benefits for his alleged loss of overtime earnings. See Pocahontas Fuel Co. v. Agee, 201 Va. 678, 681, 112 S.E.2d 835, 838 (1960) (employee was not entitled to benefits because he "never applied for work elsewhere either before or after he learned that he had silicosis, and there [was] no proof that he could not have marketed

to make a reasonable effort to market residual work capacity.

11

his remaining capacity for work"); Pocahontas Fuel Co. v. Barbour, 201 Va. 682, 684, 112 S.E.2d 904, 906 (1960) (reversing Commission's award of benefits because there was no proof either that the employee made "a reasonable effort to procure work" or that he was unable to market his residual capacity); see also Island Creek Coal Co. v. Fletcher, 201 Va. 645, 648, 112 S.E.2d 833, 835 (1960) (employee was awarded compensation because he demonstrated that "he was willing to accept other employment and did make an effort to work outside the mine but was unable to perform that work").

For these reasons, we conclude that the Commission's award of temporary partial disability benefits to Favinger was not "predicated upon evidence introduced or appearing in the proceeding." Vanzant, 143 Va. at 246, 129 S.E. at 268. We will, therefore, reverse the judgment of the Court of Appeals and enter final judgment here in favor of Ford.

Reversed and final judgment.

---

[4] Favinger's argument concerning the wage differential if he accepted overtime work with an employer other than Ford is not supported by any evidence in the record.